383 F.Supp. 127 (1974)
Bonnie E. BROCK et al., Plaintiffs,
v.
Jack B. BUNTON et al., Defendants.
No. 73 C 374(1).
United States District Court, E. D. Missouri, E. D.
August 14, 1974.
Louis Gilden, St. Louis, Mo., for plaintiffs.
Levin & Weinhaus, Charles E. Gray, Gray, Friedman & Ritter, St. Louis, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
This matter was tried to the Court and submitted on briefs of the parties.

FINDINGS OF FACT
1. Plaintiffs are the H electricians employed by Hussmann Refrigerator Company on May 1, 1971, except those who elected to be excluded.
2. Defendant, Hussmann Refrigerator Company, hereinafter referred to as Company, is and was at all times a corporation organized and existing under law, and was at all times herein the employer of plaintiffs.
3. On May 1, 1971, defendant, Gordon Garrey was President, defendant, Byron A. Roche was Vice President, defendant, Robert W. Smith was Director of Industrial Relations, and defendant, Thomas C. Barry was Labor Relations Supervisor of Company; defendant, Raymond Hawley became Vice President of Industrial Relations and defendant, John Moore became Labor Relations Supervisor for Company, all during the life of the collective bargaining agreement dated May 1, 1971, hereinafter referred to as the red book.
4. On April 16, 1971, the International Union of District 50, Allied and Technical Workers of the United States and Canada won a certification election for the representation of employees at Company, which was conducted by the National Labor Relations Board and it became the certified bargaining agent.
5. District 50 merged with the United Steelworkers of America in September, 1972, and Local 13889, International Union, United Steelworkers of America became the substituted collective bargaining agent, hereinafter referred to as Union.
6. On May 1, 1971, defendant Burlie E. Sizemore was the representative of *128 the International, Frank Crise was District 50 Regional Director, Jack B. Bunton was President of the Local, Owen B. Atkins was Chief Steward of the Local.
7. The negotiating team for the Company in May, 1971, was Roche, Smith and Barry, and the negotiating team for the Union was Crise, Sizemore, Bunton, Atkins, Johnson, Dattilo, Lima, Teal, Burns, Permenter, and Smith, all defendants in this action except for Crise.
8. The H electricians, plaintiffs, were members of the Union at all times after April 16, 1971.
9. Company is and was at all times herein an industry affecting commerce and subject to the National Labor Relations Act.
10. Union is and was at all times herein a labor organization representing employees in an industry affecting commerce and subject to the National Labor Relations Act.
11. Prior to April 16, 1971, some nine separate unions represented the employees at the Company. The H electricians were represented by Local No. 1 of the Electrical Workers, AFL-CIO. On April 16, 1971, an election was held and District 50 won. After objections were filed, District 50 was duly certified to represent all employees, including H electricians.
12. The contract with the Company expired on April 30, 1971, and because of the shortness of time between the election and expiration of the contract, District 50 after electing officers and selecting a negotiating committee agreed with the Company to extend the old contract for 30 days.
13. On May 5, 1971, Charles E. Waddell, one of the plaintiffs here, filed unfair labor practice charges against both the Company and District 50, stating violations for extending the contract. These charges were amended on May 21, 1971, charging District 50 with failing to fairly and equally represent all employees.
14. The Regional Director found the charges against the Company and District 50 to be without merit, and District 50 was formally certified on September 13, 1971.
15. After the 30 days extension of the old contract, a number of meetings were held between the Company and the Union's negotiating committee. One of the proposals advanced by the Company called for the elimination of the H electricians classification from the work done in production assembly. The Company's position was that the work on the assembly did not warrant wages paid to H electricians. The Union disagreed with the Company and a compromise was agreed upon which provided that H electricians then employed on the production line would be red circled, and would receive all of the increases and benefits negotiated under the new contract and continue on the H electricians rate until they lost red circle status. A new classification was established as a B electrician for those electricians on the production line (except for H electricians on the production line with a red circle). This agreement was unanimously agreed upon by all members of the negotiating committee, including Carl G. Smith, who was the elected representative of the electricians. This agreement was captioned and referred to as Amendment No. 1.
16. District 50 called a meeting to be held on May 27, 1971, at the UAW hall in St. Louis for the purpose of ratifying the contract, which had been negotiated between the Company and the Union. Amendment No. 1 was read to the assembled workmen. A number of the H electricians asked questions about Amendment No. 1 and charged that it meant a 41 cent an hour cut for the H electricians. The meeting broke up in a fight and an uproar, and no vote was taken on the contract.
17. Since the old contract expired on May 30, 1971, the Union and the Company agreed to hold an election on the various shifts on Friday, May 28, 1971. This was done and the total vote was *129 1,048 in favor of the contract and 289 against it. There was discussion by the H electricians of Amendment No. 1 and during the election on May 28, 1971, some of the H electricians came to the polling places with their hands behind their neck in the posture of prisoners of war protesting what they claim to be a 41 cent an hour wage cut. After the ratification by the Union members, both the contract and Amendment No. 1 were signed by the Company and the Union negotiating committee.
18. During the term of the contract a number of H electricians filed grievances challenging the validity and the legality of Amendment No. 1 and requested relief as though Amendment No. 1 was invalid and not a part of the contract. The Union declined to submit most of these disputes which challenged the validity of Amendment No. 1 to arbitration, and properly so.
19. One grievance was filed by plaintiff Ronnie L. Duncan on June 15, 1972, charging that B electricians were doing H electricians work. Another grievance was filed by plaintiff Bill Vogel on June 14, 1972, charging substantially the same thing. In both instances, the arbitrator held that the grievances had no basis, that Amendment No. 1 was properly entered into and that the new classification of H electricians, being those who work in the compressor department, required more skill that the B electricians who were on the production line.
20. There is no evidence in this record which shows that either the Company or the Union entered into any conspiracy to deprive the H electricians of any of their rights. There is no showing that the Union failed to properly represent the H electricians pursuant to a valid and binding contract which included Amendment No. 1.

CONCLUSIONS OF LAW
1. This Court has jurisdiction by virtue of 29 U.S.C. § 185 (301 of the Labor-Management Relations Act, as amended).
2. International Union of District 50, Allied & Technical Workers of the United States and Canada was selected by a majority of the Workers of Hussmann Refrigerator Company as the exclusive bargaining agent for the production and maintenance employees in an election conducted on April 16, 1971, in an appropriate unit by the National Labor Relations Board, and District 50 was thereafter certified by the NLRB as the exclusive collective bargaining agent for those workers, with authority to negotiate concerning wages, hours and other conditions of employment.
3. District 50 was the authorized bargaining agent when it and a Negotiating Committee entered into an agreement with Hussmann Refrigerator Company to extend for an additional 30 days the contract that was to expire on April 30, 1971, and when it undertook to negotiate the terms of a new collective bargaining contract.
4. The Union through its International representatives and a negotiating committee elected by the workers in the bargaining unit negotiated the terms and conditions of a new collective bargaining contract with representatives of Hussmann Refrigerator Company. Such negotiations were conducted in good faith and with full representation of workers in each craft and classification employed in the plant, including the "H" electricians employed by the Company.
5. As a result of the negotiations between Hussmann Refrigerator Company and the Union, numerous job classifications were consolidated, new job classifications were established, including the classification of "B" electricians, and such negotiations were conducted by the parties in good faith and with due regard to the advantages and disadvantages of various proposals advanced and the positions asserted by each of the parties.
6. The terms and conditions of the new contract negotiated by the parties were duly submitted for ratification to the membership of the Union at a general meeting of the union membership on May 27, 1971, and the officers and representatives of the Union attempted to read and explain the same to the membership. *130 All members had an opportunity to learn of the terms of the contract.
7. The plaintiffs' allegations that the Union and Hussmann Refrigerator Company were guilty of unfair labor practices in violation of the National Labor Relations Act vests within the exclusive jurisdiction of the National Labor Relations Board and is not a complaint over which this Court has any jurisdiction under 29 U.S.C.A. § 185. Plaintiffs' specific charges have been ruled on by the National Labor Relations Board which found there was no basis for the charges and refused to issue a complaint thereon.
8. The contract between the company and the Union, including the document identified as Amendment No. 1, were duly submitted for ratification and approval by the membership of the Union in an election conducted on May 28, 1971, in which the members of the Union voted by secret ballot. The contract and Amendment No. 1 were approved and ratified by vote of substantial majority of members in the bargaining unit. The contract, including Amendment No. 1, became effective on June 1, 1971.
9. The Union has not violated any duty of fair representation by not taking to arbitration grievances raised by plaintiffs and others attacking the validity and effectiveness of Amendment No. 1.
10. The Union has given fair and adequate representation to plaintiffs and other members of the electricians craft. It was not required to take to arbitration grievances predicated on the invalidity and unenforceability of portions of the collective bargaining contract.
11. Neither the Union nor the Company committed any fraudulent or deceitful act against any of the plaintiffs or others in their class nor have they entered into any conspiracy to deprive the plaintiffs of any of their rights. There is no evidence that the Union has engaged in any arbitrary or discriminatory acts towards any of the plaintiffs or members of their class or has acted in bad faith towards plaintiffs or other members of their class.
12. The Company has properly applied the provisions of the contract, including Amendment No. 1, and on grievances filed by plaintiffs and others that the contract has been violated, the Union has investigated their grievances and in good faith represented plaintiffs and others of their class in assuring that the contract provisions have been complied with.
13. Under the evidence and the applicable law the Court finds neither the Union nor the Company have violated any of the rights of plaintiffs under the contract or the provisions of the National Labor Relations Act and that the plaintiffs have failed to prove any cause of action.
14. Plaintiffs are barred from recovering in this cause of action against all of the defendants and a judgment will be entered in favor of all defendants and against the plaintiffs. The cause will be dismissed with prejudice, costs to be taxed against the plaintiff.