Bonnie E. BROCK et al., Appellants,

v.

Jack B. BUNTON et al., Appellees.

No. 74–1644.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1975.

Decided March 7, 1975.

* Honorable Carl B. Rubin, Judge, United States District Court, Southern District of Ohio, sitting by designation.

Louis Gilden, St. Louis, Mo., for appellants.

Charles E. Gray, and Gerald Kretmar, St. Louis, Mo., for appellees.

Before BRIGHT, ROSS and STEPHENSON, Circuit Judges.

## PER CURIAM.

The appellants in this case are representatives of a class consisting of "H class" electricians employed at Hussmann Refrigerator Company (Company) in St. Louis, Missouri. Appellees are the Company and some of its officers, Local No. 13889, International Union, United Steelworkers of America (Union),[1] some of its officers and members of its negotiation committee, and an officer of the international union with which the Union is affiliated.

On June 6, 1973, appellants brought this action under 29 U.S.C. § 185, alleging that the Union and Company had violated their collective bargaining agreement and that the Union had breached its duty of fair representation.

The case was tried in March, 1974, and on August 14, 1974, judgment was rendered for defendants and all counts dismissed with prejudice. Brock v. Bunton, 383 F.Supp. 127 (E.D.Mo.1974). We affirm the district court.[2]

The appellants' complaints stem from the negotiation, ratification and operation of Amendment 1 to the collective bargaining agreement between the Union and the Company. Before the new collective bargaining agreement and Amendment 1 went into effect in May, 1971, H electricians were employed on different types of electrical jobs throughout the Company's plant. Because the H employees were highly paid and the Company felt that most jobs utilizing H electricians did not require a high degree of skill, they proposed to change all electricians to B grade electricians, except those who worked in the compressor department, where a higher level of electrical skill was required. B electricians were to receive a lower wage than that enjoyed by H electricians, and the Union negotiation committee refused to accept the proposed change. After extensive negotiations, Amendment 1 was agreed upon as a compromise. It provided that H electricians who did not work in the compressor department would be red circled, but would continue to receive the same wages. As openings occurred in the compressor department, these H electricians would be transferred there, thus retaining their higher wage but losing their red circle status, and would be replaced with class B electricians receiving lower wages. However, if H electricians with low seniority were bumped from the compressor jobs due to layoffs and in turn bumped a B electrician, they would then receive B class wages.

---

1. In accordance with an election held April 16, 1971, the International Union of District 50, Allied and Technical Workers of the United States and Canada, was certified as collective bargaining agent for employees of the Company. District 50 merged with United Steelworkers of America in September, 1972, and Local 13889, International Union, United Steelworkers of America became the substituted bargaining agent. We do not differentiate between the predecessor and successor for purposes of this opinion, and refer to both as Union.

2. The Honorable James H. Meredith, Chief Judge, United States District Court, Eastern District of Missouri.

Amendment 1 was signed by Company and Union representatives on May 27, 1971, and an H electrician on the negotiation committee took it onto the plant floor and showed it to some of the other electricians. That night a Union meeting was held to vote on the new collective bargaining agreement. Although the meeting was rowdy, finally ending in a fight, an officer of the Union's international organization attempted to read the amendment and a question was asked about its effect. At one point in the meeting there was some mention of a 41 cent decrease, the amount they felt would be lost if transferred to a B electrician's job. Since the meeting ended in an uproar, no vote was taken that night. The Company and Union agreed that a ratification election would be held during working hours the next day, May 28, 1971, since the old collective bargaining agreement was due to expire on May 30. At the election, some of the H electricians appeared with their hands clasped behind their heads in imitation of prisoners of war, and chanted "41 cent decrease." The collective bargaining agreement was ratified by a vote of 1048 to 299.

The H electricians contend that Amendment 1 to the contract was not legally negotiated, and was not ratified because they had no notice of it before the election. Several grievances were submitted when its effects were felt. Although the Union went through grievance procedures with some of the complaints submitted, it refused to continue challenging the amendment's validity in arbitration after its initial attempts proved the futility of doing so.

Judge Meredith found that Amendment 1 was properly negotiated, and the Union membership had been adequately notified of its provisions and effect. Accordingly he held that it was a valid and enforceable part of the collective bargaining agreement approved at the election of May 28. He found no violations of the collective bargaining agreement by any of the appellees.

On the record before us we cannot say that the district court's factual determinations were clearly erroneous, or that any error of law is present, and we affirm on the basis of Judge Meredith's well reasoned opinion.[3]

3. The determination of the trial court that the NLRB had exclusive jurisdiction of the claims of unfair labor practices in violation of the National Labor Relations Act was not neces-sary to its resolution of the litigation, and we have not reached that issue in our review of the case.